**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-01991

TANGERINE TEMPLE, LLC,

    Plaintiff,

    v.

CHICTRONICS, LLC,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Tangerine Temple, LLC, for its Complaint against Defendant Chictronics, LLC, shows the Court as follows:

### INTRODUCTION

1. This is an action to enforce the Settlement Agreement (attached as Exhibit "A") entered into by Plaintiff Tangerine Temple, LLC ("Tangerine") and Defendant Chictronics, LLC ("Defendant").

2. The Settlement Agreement is the result of a first lawsuit Tangerine filed against Defendant, in which Tangerine sued Defendant for: (i) trademark infringement arising under the Federal common law; (ii) Federal unfair competition arising under the Lanham Act, 15 U.S.C. §1125(a); (iii) cybersquatting under the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1125(d); (iv) unfair competition under Colorado common law; and (v) breach of contract under Colorado law. See Exhibit "B," Original Verified Complaint.

## THE PARTIES

3. Tangerine is a limited liability corporation organized under the laws of the State of Colorado, with a principal place of business at 1176 Standing Deer Drive, Silt, Colorado 81652.

4. Defendant is a company organized under the laws of the State of Utah, with a principal address at 11351 South Silver Charm Lane, Sandy, Utah 84092.

## JURISDICTION AND VENUE

5. This Court has the "sole and exclusive jurisdiction over any controversies regarding" the Settlement Agreement. See Exhibit "A," Settlement Agreement at 10, paragraph 6.

6. Venue is proper in this judicial district and division. By agreement of the Parties, "all objections to venue in" this Court are waived. See Exhibit "A," Settlement Agreement at 10, paragraph 6.

## THE SETTLEMENT AGREEMENT

7. Tangerine and Defendant entered into a Settlement Agreement that has an Effective Date of October 1, 2011. See Exhibit "A," Settlement Agreement at 1.

8. Pursuant to the terms of the Settlement Agreement, Defendant agreed:

> not to order, produce, manufacture, distribute, sell, offer for sale, advertise, promote, license, market, or otherwise provide any goods or services in connection with the word TANGERINE, either alone or in combination with any other marks or symbols, and regardless of font or style.

See Exhibit "A," Settlement Agreement at 3, paragraph 1.1.

9. Defendant further agreed "to discontinue using the word TANGERINE by no later than November 21, 2011." See Exhibit "A," Settlement Agreement at 3, paragraph 1.2.

10. Defendant specifically agreed to stop using "TANGERINE" "in any and all tangible and print materials" including "buildings, facilities, signs, trade shows, trade show booths, and trade show materials." See Exhibit "A," Settlement Agreement at 3, paragraph 1.2.1.

11. Defendant also expressly agreed to stop any and all electronic use of "TANGERINE":

> 1.2.2 Chictronics undertakes and agrees to cease, by the Transition Deadline, any and all use of TANGERINE in, on, or as part of a domain name, a website (including but not limited to the websites located at tangerinestyle.com, tangerinejewelry.com, and tangerinestyles.com), metadata, search engine optimization, and/or any other electronic use of TANGERINE."

See Exhibit "A," Settlement Agreement at 3, paragraph 1.2.2.

12. Defendant further agreed that after November 21, 2011, Defendant would "not state or otherwise reference that [Defendant] was formerly known as Tangerine Style…." See Exhibit "A," Settlement Agreement at 5, paragraph 1.2.4.

13. In the event that Defendant did not comply with the above stated terms of the Settlement Agreement, Defendant expressly agreed to (i) "specific performance of [Defendant's] obligations under Sections 1.1, 1.2, 1.3, and 1.4 of [the Settlement] Agreement" and (ii) "an order permanently enjoining" [Defendant] from any and all continued use of TANGERINE, consistent with the terms of [the Settlement] Agreement." See Exhibit "A," Settlement Agreement at 11, paragraph 10.

14. Defendant further agreed that "the non-prevailing party shall pay to the prevailing party the costs and expenses (including the fees, costs, and expenses of legal counsel) incurred by the prevailing party in connection with enforcing its rights or defending claims hereunder." See Exhibit "A," Settlement Agreement at 3, paragraph 11.

## BREACH OF SETTLEMENT AGREEMENT

15. Tangerine realleges and incorporates herein the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

16. After November 21, 2011, Defendant used TANGERINE in its trade show booth.

17. After November 21, 2011, Defendant sold product labeled TANGERINE.

18. After November 21, 2011, Defendant has and continues to use TANGERINE and "Tangerine Style Jewelry" in meta data. See Exhibit "C."

19. For example, Defendant's source code reveals that Defendant has and continues to use TANGERINE and "Tangerine Style Jewelry" to direct Internet traffic to Defendant's web site(s):

```
1. <HTML>
2. <HEAD>
3. <META HTTP-EQUIV="REFRESH" CONTENT="0;
   URL=http://zenzii.com/new_os/catalog/index.php">
4. <meta name="google-site-verification" content="CuDNBDIxpj1iwaSNq1HO4XjnEP-
   aBqQ8djRFTtOiNKA" />
5. <TITLE>Tangerine Style Jewelry</TITLE></HEAD>
6. <BODY BGCOLOR="FFFFFF">
7. </BODY></HTML>
```

20. After November 21, 2011, Defendant has: (i) used TANGERINE in its trade show booth; (ii) sold product bearing a TANGERINE label; (iii) advertised product with meta data comprising TANGERINE; and (iv) advertised product with meta data comprising "Tangerine Style" in clear violation of the terms of the Settlement Agreement. See Exhibit "A," Settlement Agreement.

4

21. Tangerine has suffered, and continues to suffer, damages and injury to its goodwill and reputation as a direct and proximate result of Defendant's breach of the Settlement Agreement.

22. Tangerine will suffer additional and irreparable damages and injury to its goodwill and reputation unless Defendant is preliminarily and permanently enjoined by this Court from continuing its breach of the Settlement Agreement. Tangerine has no adequate remedy at law.

23. As a result of Defendant's breach, Tangerine is entitled to a judgment for: (i) the specific performance mandated by paragraph 10 of the Settlement Agreement; (ii) the permanent injunction mandated by paragraph 10 of the Settlement Agreement; (iii) Tangerine's "costs and expenses (including the fees, costs, and expenses of legal counsel)," as set forth in paragraph 11 of the Settlement Agreement; (iv) damages adequate to compensate Tangerine for Defendant's infringement of TANGERINE; (v) treble damages; and (vi) interest.

## PRAYER FOR RELIEF

WHEREFORE, Tangerine seeks the following relief:

a. That Defendant is ordered to comply with the terms of the Settlement Agreement (Exhibit "A").

b. That Defendant, its owner(s), shareholder(s), partner(s), officer(s), agent(s), servant(s), employees, and attorneys, and those persons in active concert or participation with it, are immediately, preliminary, and permanently enjoined and restrained:

(i) from using TANGERINE and/or any simulation, copy, colorable imitation, or confusingly similar variation on or in connecting with any print and/or on-line advertisement, promotion, offering for sale, sale, or distribution of women's accessory products;

    (ii) from otherwise infringing upon Tangerine's rights in and to TANGERINE and from otherwise unfairly competing with Tangerine in any manner;

    (iii) from using TANGERINE, "Tangerine Style," and/or any confusingly similar variation thereof, in meta data;

    (iv) from engaging in cybersquatting or typosquatting; and

    (v) from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

  b. That Defendant is ordered to deliver up for destruction its jewelry tags, labels, documents, signs, packages, forms, advertisements, business cards, letterheads and other representations and means for reproducing the same or any printed material bearing TANGERINE or any other mark confusingly similar to TANGERINE, and to obliterate, destroy, or remove all other uses or designations confusingly similar to TANGERINE.

  c. That Defendant is directed to file with the Court and serve on Tangerine, no later than thirty (30) days after the issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the Court's injunction.

  d. That an accounting is conducted and judgment is rendered against Defendant for:

    (i) all profits received by Defendant from or associated with its use of TANGERINE pursuant to 15 U.S.C. §1117 *et. seq.* and the common law;

    (ii) all damages sustained by Tangerine on account of Defendant's use of the TANGERINE pursuant to 15 U.S.C. §1117 *et. seq.* and the common law; and

    (iii) actual compensatory damages in an amount not presently known, but to be computed during the pendency of this action.

e.  That such damages assessed against Defendant are trebled.

f.  That Defendant is ordered to pay Plaintiff's reasonable attorneys' fees, prejudgment interest, and costs of this action.

h.  That Tangerine is granted such other and additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Tangerine demands a trial by jury of all issues triable of right by a jury.

Respectfully submitted this 31st day of July, 2012.

s/ John R. Posthumus
John R. Posthumus
 jposthumus@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
Email: litigation@sheridanross.com

Attorneys for Plaintiff,
Tangerine Temple, LLC